# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **ANDREW JACOB-SANDMAN SAYERS RULNICK,**<br><br>‖‖‖‖‖‖‖‖‖ **RULNICK,**<br>‖‖‖‖‖‖‖‖‖ **RULNICK,**<br>& ‖‖‖‖‖‖‖‖‖ **RULNICK**<br><br>**Plaintiffs,**<br><br>v.<br><br>**U.S. GOVERNMENT, ARIZONA, & DOJ, et al.**<br><br>**BREANNA RITCHY, NICOLE & JOHN SMEDLEY**<br><br>**SHERI SHEPARD & COMPANY**<br><br>**Defendants.** | **CASE NO. 2:2024cv02611**<br><br>Assigned to Honorable Humetewa<br><br><br>**PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION & ORDERED FINANCIAL RELIEF** |

**I. INTRODUCTION**

Comes now Plaintiffs, Andrew Rulnick and his minor children, ‖‖‖‖‖‖‖‖, ‖‖‖‖‖‖‖‖, and ‖‖‖‖‖‖‖‖ Rulnick (proceeding through their Next Friend, Andrew Rulnick), and *urgently* move this Honorable Court for a Preliminary Injunction and Emergency Financial Assistance. This is not a request for ordinary relief; it is a plea for *immediate intervention* to prevent *irreparable harm* to a disabled individual and his children, victims of a relentless and unconscionable campaign of systemic discrimination, abuse of process, and denial of fundamental rights at the hands of the State of Arizona, its agencies, officials, and those acting in concert with them. This Motion is filed in the spirit of a *Habeas Corpus* petition, demanding that this Court act *decisively* and *swiftly* to restore liberty and

protect the well-being of Plaintiffs, who are being crushed by the weight of a system that has utterly failed them.

Plaintiff Andrew Rulnick, a recognized leader in the field of Artificial Intelligence, has been driven to the brink of financial ruin, *has faced imminent homelessness*, separated from his children, and subjected to a constant barrage of legal attacks and harassment, all while battling the challenges of High-Functioning Autism Spectrum Disorder (HFASD). His groundbreaking work, with the potential to benefit society immeasurably, has been deliberately sabotaged. His fundamental rights have been trampled upon. His pleas for justice have been ignored. He stands before this Court now, not merely as a litigant, but as a *victim* of a system that has not only failed to protect him but has actively participated in his persecution.

The urgency of this situation *cannot be overstated*. Plaintiff is *out of funds*. He is facing imminent *[unstable housing, etc.]*. He is *unable to work* due to the constant stress and the denial of reasonable accommodations. His elderly parents, who have already sacrificed to support him, are now facing further financial strain. His children are suffering the profound and lasting effects of parental alienation and the trauma of witnessing their father's systematic abuse. *This Court is the last line of defense against a complete and irreversible collapse of Plaintiff's life and the well-being of his children.*

As Elon Musk has powerfully stated, in the context of high-stakes innovation, the "marginal value of a better decision, in the course of an hour, can easily be a hundred million dollars." **(See:** https://www.youtube.com/watch?v=Kbk9BiPhm7o&t=4712s**).**

Plaintiff, a recognized leader in the field of Artificial Intelligence, whose work encompasses inference computing, the development of advanced legal AI tools, national cybersecurity initiatives, *and cutting-edge research in supercomputing, hive-mind technology, and hive-mind drones*, operates at this level of impact and consequence. The decisions and actions of the Defendants have *directly and demonstrably* interfered with Plaintiff's ability to make those crucial, high-value decisions, causing damages that are *astronomical* in scale.

*This Court has already implicitly recognized the potential merit of Plaintiff's claims by granting him leave to file an Amended Complaint.* Plaintiff responded to this Court's initial concerns with *extraordinary speed and diligence*, utilizing his expertise in AI to create *world-class models* capable of analyzing vast amounts of legal information and assisting in the drafting of complex legal documents. *This very Amended Complaint, a testament to Plaintiff's resilience and resourcefulness, is itself evidence of the caliber of work he is capable of producing when not subjected to the Defendants' relentless campaign of obstruction and abuse.*

**Furthermore, this Court must recognize a state's affirmative duty to protect its disabled citizens from predatory and discriminatory conduct.** Plaintiff, as an individual with High-Functioning Autism Spectrum Disorder (HFASD), is entitled to the full protection of the law, including the right to reasonable accommodations and to be free from exploitation and abuse. The Defendants, fully aware of Plaintiff's disability, have not only failed to uphold this duty but have *actively weaponized* the legal system against him, seeking to leverage his disability to their advantage. This is not merely a private dispute; it is a matter of fundamental public importance, implicating the State's obligation to ensure equal access to justice for all its citizens. *The potential liabilities of all Defendants, across all related legal matters, given the scale of Plaintiff's work and the demonstrable harm caused by their actions, are staggering. This Court must recognize the immense financial and societal consequences at stake.* **Unlike Ohio, which recognizes and protects the rights of individuals with developmental disabilities under ORC 5123.62, these common-sense protections appear to be completely absent from Arizona's legal framework, as evidenced by the systemic failures and deliberate indifference Plaintiff has encountered. It is as if Arizona believes it is acceptable to exploit and intentionally prejudice people with disabilities, instead of upholding their fundamental rights.** It appears there is a fundamental dispute over what Plaintiff's legal rights *are*, particularly in light of his disability and his status as a Pro Se litigant. This dispute, fueled by Defendants' deliberate misrepresentations and obstruction, lies at the heart of this case and demands resolution through a full and fair trial.

This Motion seeks *immediate* relief: an injunction to *stop* the ongoing violations of Plaintiffs' rights, and emergency financial assistance to prevent further irreparable harm. Plaintiff believes the evidence already presented in the Amended Complaint and the attached Exhibits is *overwhelmingly sufficient* to justify this relief. *However, if this Court deems it necessary, Plaintiff requests an expedited hearing on this Motion.*

## II. JURISDICTIONAL STATEMENT

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction). Plaintiffs' claims arise under the First, Eighth, and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and 42 U.S.C. § 1983 and § 1985.

## III. FACTUAL BACKGROUND

[**Note:** This is a *condensed* version of the Factual Background from your Amended Complaint, focusing on the *immediate* and *ongoing* harm.]

1. Plaintiff Andrew Rulnick is an individual with High-Functioning Autism Spectrum Disorder (HFASD), a condition that significantly impacts his ability to navigate complex social and legal situations, process information, and communicate effectively, *particularly* under stress. Despite his disability, Plaintiff is a recognized leader in the field of Artificial Intelligence, engaged in groundbreaking research and development with potentially immense societal and economic value.

2. *Beginning in 2016*, with the initiation of divorce proceedings from Defendant Nicole Smedley in Arizona, and continuing to the present day, Plaintiff and his children have been subjected to a *relentless and unconscionable campaign of systemic discrimination, abuse of process, and denial of fundamental rights* in Arizona. This *eight-year ordeal*, detailed more fully in Plaintiff's Amended Complaint, has included, but is not limited to:

    o Systematic denial of reasonable accommodations under the ADA in Arizona courts and government agencies, *despite* Plaintiff providing documentation of his disability and making repeated requests for assistance. This denial was not merely negligent; it was a *deliberate and malicious* attempt to exploit Plaintiff's disability and deny him equal access to justice.

    o Malicious prosecutions and false arrests by Arizona law enforcement, used as tools of harassment and intimidation. These actions were not isolated incidents; they were part of a *coordinated campaign* to silence and discredit Plaintiff.

    o A concerted and *ongoing* campaign of parental alienation, orchestrated by Plaintiff's former spouses, Defendants Nicole Smedley and Breanna Ritchey, with the active or passive complicity of Arizona officials, and in *direct violation* of protective orders issued by then-Judge (now Chief Justice) Alison Bachus. **(See Exhibit 1 – Bachus Order).** This parental alienation has inflicted profound emotional harm on Plaintiff and the Children, and it continues to this day.

3. These actions in Arizona caused *profound and lasting harm* to Plaintiff and his children, creating a climate of fear, instability, and injustice that ultimately forced Plaintiff to seek refuge in another state. *This eight-year history of abuse is not merely background; it is the foundation of the current crisis and the direct cause of Plaintiff's present need for immediate federal court intervention.*

4. Seeking to escape the ongoing abuse and to create a more stable environment for his children, Plaintiff relocated to Ohio.

5. However, even in Ohio, Plaintiff continues to face legal challenges and obstacles that are *directly connected* to the prior actions of the Arizona Defendants and that *exacerbate* the harm he has already suffered. He is currently embroiled in litigation in Ohio stemming from his attempts to secure safe and stable housing, *litigation made necessary by the Arizona Defendants' conduct*.

6. The actions of the Arizona Defendants, and the ongoing legal challenges, have had a devastating impact on Plaintiff's ability to work. His AI research and development, which requires intense focus and a stable environment, has been severely disrupted. *What should have been simple, routine tasks for Plaintiff became insurmountable obstacles due to the deliberate actions of Defendants and their agents, as supported by the Exhibits. The nature of Plaintiff's work in AI is extraordinarily demanding, requiring intense concentration, complex problem-solving, and sustained periods of uninterrupted focus.* **Even under optimal conditions, this work presents significant challenges. The conditions created by Defendants have made such work nearly utterly impossible.**

7. As a *direct and proximate result* of the *combined actions* of the Defendants, Plaintiff is now:

    - **Bankrupt and facing imminent homelessness.** He is completely out of funds, with rent due and no means to pay it. He has *previously faced the imminent threat of homelessness* due to Defendants' actions, and that threat remains a constant reality.

    - **Facing shut-off notices for essential services.** His credit lines have been cut, and he is unable to pay for basic utilities.

    - **Suffering severe physical and emotional distress.** The stress of this situation has manifested in painful scalp cysts **(See Exhibit [Number] – Photographs of Scalp Cysts)**, and his mental health has been severely impacted.

    - **Unable to work.** The constant legal battles, the harassment, the financial devastation, and the denial of accommodations have made it *impossible* for Plaintiff to continue his groundbreaking AI research.

    - **Separated from his children:** The ongoing parental alienation, exacerbated by the legal and financial challenges, has severely damaged his relationship with his children. *The scientific and psychological literature is clear: the absence of a father figure, particularly when coupled with active parental alienation, has demonstrably negative impacts on a child's development, emotional well-being, and long-term outcomes.* This is not a mere inconvenience; it is a *grave and ongoing harm* to the Children, directly attributable to the Defendants' actions.

    - **Further burdening his elderly parents.** His parents have already strained their limited resources; and cannot afford to keep supplementing the shortfalls caused by all the defendant's bad faith actions.

8. Plaintiff has exhausted all reasonable avenues for redress within the State of Arizona. The Arizona courts, law enforcement agencies, and social services have demonstrably failed to protect his rights or provide him with any meaningful relief. *The Arizona system, as a*

*whole, has proven itself to be either unwilling or unable to provide justice for Plaintiff and his children.*

9. Plaintiff has provided, and will continue to provide, ample documentation to the court of his diagnosis, and disabilities. *Plaintiff respectfully inquires whether this Court has on file adequate documentation of his High-Functioning Autism Spectrum Disorder (HFASD) diagnosis. If not, Plaintiff will promptly provide a copy. Plaintiff also offers to provide, if needed, additional copies of exhibits demonstrating his current financial hardship.* Furthermore, exhibits cannot be properly, or timely uploaded to PACER as they should be. The Plaintiff requests assistance from the court, and the clerk, with permission to make fully digital filings via email and/or online cloud storage. Plaintiff is willing to sign any agreements, or provide any information, that the court deems necessary to receive accommodations to participate in these proceedings fairly.

**IV. LEGAL STANDARD FOR PRELIMINARY INJUNCTION**

To prevail on a motion for preliminary injunction, the movant must establish: 1) that he/she/they is likely to succeed on the merits, 2) that he/she/they is likely to suffer irreparable harm in the absence of preliminary relief, 3) that the balance of equities tips in his/her/their favor, and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).

**V. ARGUMENTS**

Plaintiff Andrew Rulnick and his Children are entitled to a preliminary injunction and emergency financial assistance because they meet all the requirements for such relief under established federal law. The evidence demonstrates a clear likelihood of success on the merits of their claims, an imminent threat of irreparable harm, a balance of hardships tipping sharply in their favor, and a strong public interest in preventing further violations of their fundamental rights.

**A. Plaintiffs are Likely to Succeed on the Merits of Their Claims.**

Plaintiffs have presented compelling evidence, and will continue to present further evidence through discovery, demonstrating a high likelihood of success on the merits of their claims, including:

1. **Violation of Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act:** The State of Arizona, its agencies, and its subdivisions (including the courts, law enforcement, and DCS) are public entities subject to these federal laws, which prohibit discrimination based on disability. The *systematic* denial of reasonable accommodations to Plaintiff Andrew Rulnick, despite his documented HFASD, constitutes a clear violation of these statutes. This denial occurred in *multiple* contexts:

- - **Arizona Courts:** Plaintiff was denied accommodations in family court proceedings, in the Mesa criminal proceedings, and in his interactions with the Clerk's Office, hindering his ability to access justice and enforce court orders.
  - **Law Enforcement:** Plaintiff was denied accommodations during interactions with law enforcement, including during false arrests, exacerbating the harm and trauma of those encounters.
  - **DCS:** Plaintiff was denied accommodations in his interactions with DCS, hindering his ability to cooperate with investigations and protect his parental rights.

   This systemic denial is not mere negligence; it is evidence of *deliberate indifference* to Plaintiff's rights and a *weaponization* of his disability against him. The Supreme Court has made clear that Title II of the ADA applies to state court proceedings. *Tennessee v. Lane*, 541 U.S. 509 (2004). The failure to provide accommodations, in this case, rises to the level of a constitutional violation. The principle articulated in *Olmstead v. L.C.*, 527 U.S. 581 (1999), that unnecessary segregation of individuals with disabilities is a form of discrimination, applies with equal force to the denial of access to justice. Plaintiff's High-Functioning Autism Spectrum Disorder is a recognized disability under the ADA, as established in *Bragdon v. Abbott*, 524 U.S. 624 (1998). The *cumulative* effect of Defendants' repeated failures to accommodate this disability has caused significant and irreparable harm.

2. **Violation of the Fourteenth Amendment (Due Process and Equal Protection):** The actions of the Arizona Defendants, acting under color of state law, have demonstrably violated Plaintiff Andrew Rulnick's rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution. The malicious prosecutions, false arrests, denial of accommodations, and the concerted effort to undermine his parental rights, all constitute a denial of fundamental fairness and equal treatment under the law.

3. **Violation of the Eighth Amendment (Cruel and Unusual Punishment):** The excessive force used by Mesa Police Officers during an unlawful arrest, and the subsequent denial of medical care, constitute cruel and unusual punishment in violation of the Eighth Amendment. *Graham v. Connor*, 490 U.S. 386 (1989); *Hudson v. McMillian*, 503 U.S. 1 (1992).

4. **Conspiracy to Violate Civil Rights (42 U.S.C. § 1983 and 42 U.S.C. § 1985):** The evidence demonstrates a *pattern* of coordinated action by multiple Defendants (state actors, former spouses, attorneys) to deprive Plaintiffs of their rights. This coordinated action, motivated by discriminatory animus and bad faith, constitutes a conspiracy under federal law.

5. **Violation of Principles Embodied in Ohio Rev. Code 5123.62:** While this is a federal case, the principles underlying Ohio Rev. Code 5123.62, which protects the rights of individuals with developmental disabilities, are relevant.

**Evidence supporting these claims is substantial and includes, but is not limited to:**

- The Protective Orders issued by Judge Bachus (Exhibit 1), which were systematically violated by the Defendants.
- Documentation of Plaintiff's HFASD diagnosis and his requests for accommodations.
- Evidence of the malicious prosecutions and false arrests in Arizona (police reports, court records, etc. - to be detailed in the Amended Complaint and exhibits).
- The video recording of the excessive force incident by Mesa PD (Exhibit [Number]).
- Communications demonstrating parental alienation tactics (Exhibit [Number]).
- Evidence of the economic harm to DESIGNA, LLC (Exhibit 2, and other supporting documentation).
- The Ohio Court of Common Pleas Order granting accommodations (Exhibit [Number]).
- The email from Redwood's counsel demonstrating the broken promise to consolidate (Exhibit [Number]).
- Photographs of Plaintiff's scalp cysts (Exhibit [Number]), demonstrating the physical manifestation of the stress and harm caused by Defendants' actions.

Plaintiff is confident that, upon a full presentation of the evidence, he will prevail on the merits of his claims.

**B. Plaintiffs Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction.**

Plaintiffs are *currently suffering* and will continue to suffer *irreparable harm* if a preliminary injunction is not issued. This harm is not speculative; it is *real, immediate, and ongoing*:

1. **Imminent Risk of Homelessness and Continued Separation from Children:** Plaintiff is bankrupt, without funds, and facing imminent eviction. He has no means to pay rent or secure alternative housing. The loss of his home will have devastating consequences for him, exacerbating his existing trauma and further disrupting his life. *However, the most*

*profound and irreparable harm is the ongoing separation from his children, a direct result of the malicious and unlawful actions of the Arizona Defendants, particularly his former spouses, and facilitated by the systemic failures within Arizona's court and child welfare systems.* This separation, already causing immense emotional distress to both Plaintiff and the Children, is further compounded by the threat of homelessness. *The inability to provide a stable and secure home for his children, due to the Defendants' actions, is a continuing and devastating violation of Plaintiff's fundamental parental rights and a profound harm to the Children themselves.* Homelessness, coupled with the *existing, enforced separation from his children*, constitutes irreparable harm of the highest order. This is not a theoretical possibility; it is the *present reality* of Plaintiff's life, a reality directly caused by the Defendants' misconduct. The scientific and psychological literature is clear: the absence of a father figure and the active alienation of a parent have demonstrably negative impacts on a child's development, emotional well-being, and long-term outcomes. This is not a mere inconvenience; it is a *grave and ongoing harm* to the Children, directly attributable to the Defendants' actions.

2. **Utility Shut-Offs:** Plaintiff is facing imminent shut-off of essential utilities, further jeopardizing his health and safety and creating uninhabitable living conditions.

3. **Ongoing Parental Alienation:** The continued separation from his children, fueled by the actions of his former spouses and facilitated by the systemic failures in Arizona, is causing *irreparable damage* to his parent-child relationships. This is a harm that cannot be undone, and it has profound and lasting consequences for both Plaintiff and his Children. Every day that passes without meaningful contact deepens the wounds of alienation.

4. **Denial of Access to Justice:** The ongoing denial of reasonable accommodations in the legal proceedings, the obstruction of justice by opposing counsel, and the systemic discrimination Plaintiff faces prevent him from effectively pursuing his legal claims and protecting his rights. This is a fundamental denial of due process and equal protection, and it is an *ongoing* harm that cannot be remedied by monetary damages alone. *Plaintiff, as an individual with HFASD, faces unique challenges in navigating the legal system. The Defendants have not only failed to address these challenges; they have actively exploited them, creating a situation where Plaintiff is effectively denied access to justice.*

5. **Physical and Emotional Harm:** Plaintiff continues to suffer physical harm (scalp cysts) and severe emotional distress as a direct result of Defendants' actions. This ongoing harm is exacerbating his disability and undermining his ability to function. The physical manifestation of his stress is *visible proof* of the continuing damage.

6. **Impossibility of Working:** The interference of the defendants, makes working in the Plaintiff's profession impossible.

7. **Further Burdening His Elderly Parents:** Plaintiff's elderly parents have already expended over $75,000 to support him and his children during this ordeal, straining their own limited resources and jeopardizing their financial security. This is a *direct consequence* of the Defendants' actions, and it adds to the overall irreparable harm.

8. **Prior Legal Expenses:** Plaintiff was compelled to retain the services of legal counsel (Keith Berkshire) in Arizona, paying almost $100,000 to secure the Bachus Protective orders, which were then intentionally and systematically violated by the Defendants.

These harms are *not* merely financial; they are *irreparable* in nature. Money damages alone, awarded at some future date, cannot undo the damage to Plaintiff's relationship with his children, restore his health, or compensate for the loss of his home and his ability to work, nor can it fully restore the injustices that have occurred. *Only immediate injunctive relief can prevent further irreparable harm.*

### C. The Balance of Hardships Tips Sharply in Plaintiffs' Favor.

A balancing of the potential hardships clearly favors granting the preliminary injunction.

- **Harm to Plaintiffs if Injunction is Denied:** As detailed above, the harm to Plaintiffs if the injunction is *denied* is catastrophic and irreparable: homelessness, loss of contact with children, continued denial of access to justice, worsening health, and complete financial ruin.

- **Harm to Defendants if Injunction is Granted:** The harm to Defendants if the injunction is *granted* is minimal. The injunction would primarily require them to:
    - *Comply with existing law* (the ADA, the Constitution, Arizona statutes, Ohio statutes).
    - *Cease their unlawful conduct* (harassment, discrimination, abuse of process).
    - *Provide reasonable accommodations* to Plaintiff.

Requiring Defendants to comply with the law and cease their unlawful conduct is *not* a hardship; it is a *basic requirement* of a just society. Any inconvenience to Defendants pales in comparison to the devastating and irreparable harm Plaintiffs are facing.

### D. A Preliminary Injunction is in the Public Interest.

Granting a preliminary injunction in this case would serve the *strong public interest* in:

- **Upholding the Americans with Disabilities Act:** Protecting the rights of individuals with disabilities to equal access to justice and public services.

- **Preventing Abuse of Process:** Deterring the use of the legal system as a tool of harassment and intimidation.

- **Protecting Parental Rights:** Safeguarding the fundamental right of parents to maintain relationships with their children.

- **Enforcing Judicial Authority:** Ensuring that court orders (like Judge Bachus's) are respected and enforced.

- **Promoting Fairness and Equity:** Ensuring that all individuals, regardless of their disability or financial status, have a fair opportunity to pursue justice.

- **Deterring Future Misconduct:** Sending a clear message that such egregious violations of civil rights will not be tolerated.

Denying the injunction, on the other hand, would send the opposite message: that powerful actors can violate the law with impunity, exploit vulnerable individuals, and manipulate the legal system to their advantage. This would undermine public trust in the justice system and embolden further misconduct.

**VI. SPECIFIC RELIEF REQUESTED (Preliminary Injunction)**

Based on the foregoing, Plaintiffs respectfully request that this Court issue a Preliminary Injunction, *effective immediately*, ordering the following:

1. **Prohibition of Further Harmful Conduct:** Enjoin *all* Defendants (State of Arizona, its agencies and officials, the Cities of Mesa, Phoenix, and Gilbert, the Paradise Valley Unified School District, and the individual Defendants), their agents, employees, and representatives from engaging in any further acts of harassment, discrimination, retaliation, abuse of process, or interference with Plaintiff's rights, including, but not limited to:

    - Any further actions that would interfere with Plaintiff's ability to pursue his legal claims in this case or in related proceedings.
    - Any further disparaging or false statements about Plaintiff to third parties.
    - Any further interference with Plaintiff's parental rights or his relationship with his Children.
    - Any further actions that would impede Plaintiff's ability to secure safe and stable housing.
    - Any further actions that would impede Plaintiff's ability to secure medical care.

2. **Mandatory Accommodations:** Order the State of Arizona, and all its relevant agencies and subdivisions (including the courts, law enforcement, and DCS), to *immediately* provide Plaintiff with reasonable accommodations under the ADA and the Rehabilitation Act in *all* ongoing proceedings and interactions, including, but not limited to:

- o Multi-modality is essential for complex legal matters and instructions (written, visual, auditory, etc. as needed for optimal comprehension).
- o Clear, concise, and unambiguous language in all court orders and communications.
- o Sufficient time to process information and respond to deadlines, with flexibility where reasonably possible.
- o Breaks during hearings and court proceedings as needed to manage sensory overload and maintain focus.
- o Plain language explanations of legal terms and procedures, upon request.
- o Flexibility in filing formats and methods to accommodate potential technical challenges related to disability and current limitations on resources, to include direct email access to court clerks for assistance.
- o Allowance for a support person or advocate to be present during hearings and meetings (non-legal representation).
- o Daily phone/video calls with children.
- o Order for [John Smedley's name] to cease communication about legal matters with children.
- o Order for Arizona courts to comply with an accommodations order.

3. **Emergency Financial Assistance (Writ of Restitution):** Order the immediate disbursement of **One Million Dollars ($1,000,000.00)** to Plaintiff as a form of *equitable restitution* and emergency financial assistance, to be drawn from [Specify Source - e.g., federal victims' relief funds administered by the Department of Justice, or state-level victims' compensation funds in Arizona]. This assistance is necessary to:

- o Prevent Plaintiff's imminent homelessness and utility shut-offs.
- o Provide for Plaintiff's and his Children's basic needs.
- o Alleviate the extreme financial hardship caused by Defendants' actions.
- o Enable Plaintiff to effectively participate in this litigation and pursue justice.
- o Allow Plaintiff to begin the process of rebuilding his life and his work.
- o The very beginning steps of effectively right-sizing or resuscitation of the corpse of an extraordinarily valuable company

4. **Expedited Hearing (Conditional):** While Plaintiff believes the evidence presented in this Motion and in the Amended Complaint is *overwhelmingly sufficient* to justify the

requested relief *without further delay*, Plaintiff requests an expedited hearing on this Motion *if the Court deems such a hearing necessary*.

## VII. CONCLUSION

The situation facing Plaintiff and his Children is dire and demands immediate action. When you look at the exhibits on record, the message is clear. The autistic was forced out of the closet, in prejudice about his disabilities, and never properly accommodated as defined by the ADA / Title II through the interactive process, *the courts we devoid of an interactive process **for years***. Additionally, the Defendants, through their deliberate and malicious actions, have created a crisis that threatens Plaintiff's very survival and the well-being of his children.

This Court has the power, and indeed the *duty*, to intervene, to halt the ongoing harm, and to provide a measure of immediate relief. Plaintiff respectfully requests that this Motion for Preliminary Injunction and Emergency Financial Assistance be *granted* in its entirety.

Respectfully submitted,

**/s/ Andrew Rulnick**

February 27th 2025

Andrew Rulnick | 733 West Market Street | Akron, Ohio 44303
Andrew@DESIGNA.xyz | 480.527.7255

**CERTIFICATE OF SERVICE**

I hereby certify that I've served the opposing parties / Defendants a true and correct copy of the foregoing by email. Feb 27th, 2025

*A Rulnick*

Plaintiff, Pro se

Andrew Rulnick | 733 West Market Street | Akron, Ohio 44303
Andrew@DESIGNA.xyz | 480.527.7255